# In the United States District Court
## for the District of Utah, Central Division

| | |
|---|---|
| THE STATE OF UTAH, BY AND THROUGH THE UTAH STATE DEPARTMENT OF HEALTH,<br><br>           Plaintiff,<br>and<br><br>SALT LAKE COUNTY WATER CONSERVANCY DISTRICT,<br><br>         Plaintiff-Intervener,<br><br>     vs.<br><br>KENNECOTT CORPORATION,<br><br>         Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:86cv902 |

On April 12, 2005, petitioner, Thomas A Belchak, filed a motion to intervene in the case of *State of Utah v. Kennecott Corp.*, 801 F.Supp. 553 (D. Utah 1992), and to set aside a Consent Decree entered by this Court on August 21, 1995. Plaintiff, State of Utah, filed opposition to Mr. Belchak's motion to intervene on April 29, 2005. Defendants, Jordan Valley Water Conservancy District (formally Salt Lake County Water Conservancy District) and Kennecott Corporation, filed additional memoranda in opposition to the intervention, also on April 29, 2005. There was no reply by the petitioner to the memoranda in opposition to intervention. Also, there was no request for oral argument.

After due consideration, this Court denies petitioner's motion for intervention as a matter of right as well as petitioner's alternative motion for permissive intervention.

### FACTS AND PROCEDURAL HISTORY

This case was originally filed on October 3, 1986.  The State of Utah, by and through the Utah State Department of Health, filed an action against Kennecott Corporation under Section 107(a)(4)(c) of CERCLA (42 U.S.C. § 9607(a)(4)(c)) for alleged damage to State ground water natural resources.  A motion to stay was granted by this Court to allow the parties to complete and analyze a five-year hydrogeologic study of the contaminated area.

Upon completion of the study and after lengthy negotiations between the parties a consent decree was filed with the court on July 31, 1992.  Soon after the filing of the proposed consent decree, the Salt Lake County Water Conservancy District filed a motion to intervene in opposition to the proposed consent decree.  This Court allowed permissive intervention and then denied entry of the proposed 1992 consent decree because it was not "just and fair" and it did not meet the purposes of CERCLA.

After the 1992 proposed consent decree was rejected by the Court, several more years of negotiations lead to another proposed Consent Decree in 1995.  Public comment was heard concerning this proposed Consent Decree throughout the month of June 1995.  Certain modifications were made responsive to public comment, and this Court entered and promulgated the existing Consent Decree on August 21, 1995.

In accordance with the 1995 Consent Decree the parties continued to work together for eight years to create a joint proposal to clean up and restore the contaminated area.

A joint proposal was then submitted to the State Trustee in September, 2003.  The joint proposal

for implementation received public comment from September 2, 2003 through November 21,

2003.  In addition, another public forum was opened from June 18, 2004 to August 2, 2004.  The

petitioner, Mr. Belchak, participated in the public meetings and submitted written comments.

The State Trustee approved the joint proposal, on August 31, 2004, and work was begun

immediately thereafter for construction of the proposed facilities.

On April 12, 2005, Mr. Belchak filed his pending motion to intervene in this

action, urging that the 1995 Consent Decree be set aside as void.

## ARGUMENTS

### 1. Petitioner's Argument

In support of his motion for intervention, Mr. Belchak submits that he is a resident

of South Jordan, Utah, and a member of the class of persons entitled by CERCLA to a 30-day

public comment period prior to the entry of any judgment or consent decree.

In his stance to set aside the 1995 Consent Decree, Mr. Belchak claims that only a

21 day public comment period was provided, contrary to the CERCLA mandated 30-day public

comment period.  Therefore, he claims that the 1995 Consent Decree is void because the consent

decree was filed on August 1, 1995 and was entered by this Court on August 21, 1995.

Finally, petitioner claims that the 1995 Consent Decree is a "sweetheart deal"

between the State and Kennecott which is "woefully inadequate" to remedy the ground water

contamination.

Mr. Belchak does not cite any sources or evidence for the claims outlined above.

**2. State of Utah's Argument in Opposition**

The State argues that the motion to intervene is deficient in several ways.  <u>First</u>, it fails to comply with Rule 24 of the Federal Rules of Civil Procedure, and the applicable federal statute concerning right of intervention as well as permissive intervention, i.e. 42 U.S.C. § 9613(I).  Accordingly, the State submits that Mr. Belchak does not demonstrate a "legally protectable interest" in the action.  <u>Second</u>, petitioner's motion to intervene is untimely in the extreme because it was filed ten years after the consent decree was entered.  <u>Third</u>, granting intervention would greatly prejudice the existing parties who have spent millions of dollars and years of time and resources in reliance upon the Consent Decree and the joint proposal in question.

The State also argues that CERCLA does not mandate a 30-day public comment period concerning approval of settlement of an action brought by a State Trustee.  In any event, the State submits that there actually was a 30-day public comment period agreed upon and provided by the parties before the 1995 Consent Decree was entered by the court.  Overall, the State claims that Mr. Belchak's motion is "legally unsupported and factually wrong."

Plaintiff-intervener Jordan Valley Water Conservancy District joins in the State of Utah's response, as does Defendant Kennecott.  In addition, Kennecott emphasizes that a motion for intervention should be denied after entry of a consent decree, in the absence of "most exceptional circumstances," which are not present here.

4

## ANALYSIS

### I. Right of Intervention

Thomas A. Belchak seeks to intervene and set aside the 1995 Consent Decree, which was approved and signed by this Court, as is more fully set forth and described in the case of *State of Utah v. Kennecott Corp.*, 801 F.Supp. 553 (D. Utah 1992). Intervention in any action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") is governed by CERClA § 113(j), 42 U.S.C. § 9613(I), and Rule 24 of the Federal Rules of Civil Procedure. The statute upholds the right of a person to intervene "when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties." 42 U.S.C. § 9613(I). Intervention under Rule 24 is almost identical. This Court stated the rule thusly:

> A potential Intervener must (1) make a timely application for intervention, (2) have an interest in the subject of the action, (3) be so situated that without intervention the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect his interest, and (4) have an interest not adequately protected by the existing parties. *United States v. Mid-State Disposal, Inc.*, 131 F.R.D. 573, 576 (W.D.Wis.1990). If one or more of the above criteria are not met, a party will not qualify for **intervention of right**, as distinguished from **permissive intervention**.

*State of Utah v. Kennecott Corp.*, 801 F. Supp. at 571-72 (Emphasis added); *appeal dismissed* 14 F.3d 1489 (10th Cir. 1994); *cert. denied* 513 U.S. 872 (1994). The only difference between the statute and the rule is who bears the burden of proof in "showing

5

that the applicant's interest is or is not adequately represented." *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). Under Rule 24(a)(2) the proposed intervener bears this burden of proof, while under 42 U.S.C. § 9613(I), CERCLA places this burden on the government. Both the statute and the Rule require that <u>all four requirements must be met in order to intervene as a matter of right</u>. *Id.* at 70. These requirements are next discussed.

### A. Timely Application for Intervention

A motion for intervention after the entry of a consent decree is generally denied if it is not timely filed. *See United States v. State of Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) ("waiting until after entry of a consent decree weighs heavily against intervention"); *Delaware Valley Citizens' Council for Clean Air v. Commonwealth of P.A.*, 674 F.2d 970, 974 (3d Cir. 1990) (finding motion to intervene untimely when filed 20 months after entry of consent decree). However, the length of time an action is filed after entry of a consent decree does not by itself determine timeliness. "The analysis [of timeliness] is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). In this regard, the Tenth Circuit has set forth the following factors concerning timeliness: "[T]he timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. United States Dept. of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). The factors emphasized by the

6

Tenth Circuit as bearing upon timeliness weigh against the tardy application by Mr. Belchak.

### 1. Length of Time Since the Applicant Knew or Should Have Known of His Interest

"A party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *State of Oregon*, 913 F.2d at 589.  Mr. Belchak fails to mention in his supporting papers when he first learned of his purported adversely affected interest as revealed in the 1995 Consent Decree or as discussed in *State of Utah v. Kennecott*.  Constructive notice of the 1995 Consent Decree was given when the public comment period was provided prior to the filing of the proposed Consent Decree commencing on August 1, 1995.  Previously, the State conducted a "public comment period on the proposed Consent Decree" during the period of June 1-30, 1995.  (Dianne R. Nielson Aff. ¶ 4.)  Notice was posted in the Deseret News and the Salt Lake Tribune.  (*Id*.)  The proposed documents were available at three locations throughout the Salt Lake Valley.  (*Id*.)  "[The] EPA, the Salt Lake County Attorney's Office, and the Sierra Club submitted comments on the proposed Consent Decree."  (*Id*. at ¶ 5.)  Because of the large media attention and published notices the petitioner should have known at that time about how his potential interest in the case might be affected.  This constructive notice was certainly available and widespread prior to entry of the Consent Decree on August 21, 1995.  (*Id*. at ¶ 6-7.)

Mr. Belchak had actual knowledge of the Consent Decree in 2003 because he participated in the public meetings concerning the joint proposal having to do with the proposed 1995 Consent Decree.  (*Id*. at ¶ 11.)  After years of continued talks and negotiations, Kennecott

7

and the Jordan Valley Water Conservancy District submitted a joint proposal to the State Trustee in 2003 concerning the proposed 1995 Consent Decree.  (*Id*. at ¶ 9-10.)  A public comment period was provided during the period September 2, 2003 through November 21, 2003.  (*Id*. at ¶11.)  Modifications were made to the proposal and another public comment period ensued from June 18, 2004 to August 2, 2004.  (*Id*.)  Mr. Belchak participated in both of these extended public comment sessions.  (*Id*.)  The joint proposal was approved and an agreement was entered by the parties on August 31, 2004.  (*Id*. at ¶13.)  The petitioner did not file his current motion with the Court until April 12, 2005, almost a year and a half after he had verifiable <u>actual knowledge</u> on or about September 2, 2003.  Mr. Belchak, in waiting to file his motion to intervene almost ten years after he should have known, and a year and a half after verifiable proof that he actually did know of the proposal to adopt the 1995 Consent Decree, failed to meet this factor of timeliness.

## 2. Prejudice to the Existing Parties

"One of the 'most important' factors in determining timeliness is prejudice to the existing parties." *State of Oregon*, 913 F.2d at 588 (citations omitted).  "The prejudice prong of the timeliness inquiry 'measures prejudice caused by the intervenors' delay – not by the intervention itself.'" *Utah Ass'n of Counties*, 255 F.3d at 1251 (quoting *Ruiz v. Estelle,* 161 F.3d 814, 828 (5th Cir. 1998)).  Courts generally deny intervention when prejudice to the existing parties is shown to exist, but courts look to the circumstances of such claimed prejudice and how it should be balanced against other factors.  *See Cal. Dept. of Toxic Substances v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (affirming district courts finding that intervention after the consent decree "would unnecessarily prolong the litigation, threaten the

8

parties' settlement, and further delay cleanup"); *State of Oregon*, 913 F.2d at 589 (holding that intervention would "seriously prejudice all the parties to the suit because the plan is complex and delicately balanced"); *Pitney Bowes, Inc.*, 25 F.3d at 72 (denying intervention based on prejudice where it would postpone cleanup and "wast[e] the fruits of lengthy negotiations"); *U.S. v. Allegheny-Ludlum Industries*, 553 F.2d 451, 453 (5th Cir. 1977) (denying intervention after the consent decree because it will prejudice existing parties by "jeopardizing months of negotiations, causing substantial litigation expenses, and even more substantial expenses of implementation").

The parties in the current suit would be prejudiced by the intervention of Mr Belchak at this late date.  This is manifest and clear in the State of Utah's Response: "The parties have conducted studies, negotiated and entered into contracts, designed and constructed water treatment facilities and acquired and transferred property all to accomplish the objectives of the 1995 Consent Decree."  (Pl.'s Response at p. 6.)  There has been extensive public involvement concerning the 1995 proposed Consent Decree.  (Nielson Aff. ¶11.)  Kennecott, the State of Utah, and the Jordan Valley Water Conservancy District have "expended significant resources" and allocated and invested millions of dollars in connection with the 1995 Consent Decree.  (*Id.* at ¶ 16-17.)

Based on the above described facts, it is manifest that the proposed intervention would greatly prejudice the existing parties.  This Court adopts and follows the clear weight of case law which would deny intervention because of prejudice to existing parties in similar cases.

### 3. Prejudice to Applicant (Petitioner)

Prejudice to applicant is one of the elements of timeliness. *Utah Ass'n of Counties*, 255 F.3d at 1250.  Mr. Belchak fails to state how he would be prejudiced if his motion for intervention is denied.  Mr. Belchak states only that he lives in West Jordan, Utah and that he believes that the 1995 consent decree is "inadequate to protect the underground aquifer."  (Pet'r Br. 5.)  However, Mr. Belchak has failed to carry the burden of proof as to how such alleged inadequate protection has prejudiced him, or indeed as to how he would be prejudiced by denial of his petition to intervene.

### 4. Unusual Circumstances

The fourth factor bearing upon timeliness has to do with unusual circumstances as to why the intervention should or should not be allowed.  Mr. Belchak did not present any argument or evidence in his motion regarding any usual circumstances that would excuse the untimeliness of his intervention.  Defendant, Kennecott Corporation, did state in its response to petitioner's motion for intervention that the motion should be denied because "exceptional circumstances" were not present here.  Petitioner never replied to this statement or made any showing of such unusual or exceptional circumstances.  No unusual or exceptional circumstances that would permit such untimely intervention have been called to the attention of this Court.

### B. Interest in the Subject of the Action

CERCLA § 113(I) and Rule 24(a)(2) both state that the intervening applicant must "claim[ ] an interest relating to the property or transaction which is the subject of the action."

This interest must be a "direct, substantial, legally protectable interest in the proceedings." *See*

*United States v. Acorn Engineering Co.*, 221 F.R.D. 530, 538 (C.D. Cal. 2004) (quoting

*Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987)).  Mr.

Belchak bears the burden of proof in establishing *his* interest in the subject of this action.

Mr. Belchak simply states that he is "a resident of South Jordan," and "a member

of the class of persons contemplated by the provisions of the CERCLA statute entitled to 'public

comment' opportunities and rights."  (Pet'r Br. 2.)  The public interest is also pertinent in this

case: "Congress enacted CERCLA to protect the health of citizens and to act in the public

interest."  *United States v. BASF-Inmont Corp.*, 819 F.Supp. 601, 606 (E.D. Mich. 1993)

(citations omitted).

This Court holds that Mr. Belchak has failed to carry the burden of proof to show

that his interest is direct, substantial, or a legally protectable interest in the proceedings.

### C. Disposition of action without intervention would impair or impede ability to protect Intervener's  interest

Assuming without deciding that the petitioner has a legally protectable interest as

a member of the public, he must show that disposition of the case without intervention would

adversely affect petitioner more directly than simply to impair or impede his interest.  Again, this

Court finds that Mr. Belchak has failed to make any such showing or to shoulder the burden of

proof in this regard.

### D. Interest is not adequately protected by the existing Parties

Rule 24(a)(2) places the burden on the proposed Intervener to prove that the

existing parties do not adequately protect his interests. However, intervention under CERCLA §

113(I) and 42 U.S.C. § 9613(I) places this burden on the State.  Under either alternative, a person who asserts an interest as does this petitioner by simply being a member of the public, faces a presumption that the State as a party will adequately represent persons who assert a public interest.  "A prospective Intervener that basically asserts the public interest faces a presumption that the state's representation of the public interest will be adequate."  *BASF-Inmont Corp.*, 819 F.Supp. at 606 (quoting *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 144 (1st Cir. 1982)).

Mr. Belchak does not directly address this requirement in his brief.  He does claim that the State negotiated a "sweetheart deal" with Kennecott that the "deal" "provides less than one-percent" of the actual costs of restoration and is "inadequate to protect the underground aquifer."  (Pet'r Br. 5-6.)  However, Mr. Belchak does not cite to any authority or provide any factual basis for this claim.  The Court is left to speculate as to the authenticity and merit of this unsubstantiated claim.

Also, the State does not directly address the issue, but the State is given a presumption that its representation of the public interest is adequate.  *BASF-Inmont Corp.*, 819 F.Supp. at 606.  Additionally, public comment periods allow citizens and interest groups to express views without being a party to the action.  *Id.* at 605 (citation omitted).  Public comment was considered prior to adoption of the 1995 Consent Decree, and prior to the subsequent clean-up proposal.  (Nielson Aff. ¶ 4-5.)  The 1995 Consent Decree was modified in conjunction with submitted comments which were supported by the Sierra Club.  (*Id.* at ¶ 6-8.)  The position of the State, the amount of public input, and the support of the Sierra Club tends to establish that the State, as a party participant, adequately protected the public interest which would include Mr.

Belchak's purported interest.

## II. Permissive Intervention

Rule 24(b) of the Federal Rules of Civil Procedure allows for a permissive intervention if one does not qualify for Right of Intervention under Rule 24(a).  The court, in its discretion, may allow intervention where the petitioner (1) makes a timely application, (2) has a separate claim or defense that has a common question of law or fact with the main action, and (3) does not unduly delay or prejudice the rights of original parties. Fed. R. Civ. P. 24(b).  This Court also stated that another determinable factor is "whether the interveners will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  *State of Utah*, 801 F.Supp. at 572 (citations omitted).

Mr. Belchak's motion, as shown earlier, is untimely and prejudicial to the existing parties.  Additionally, in his request for intervention, he fails to present a question of law or fact upon which the Court can make a determination for permissive intervention.  Lastly, Mr. Belchak has not shown how his intervention will "significantly contribute" to the "just and equitable adjudication" of the case.  Accordingly, this Court rules that the petitioner has not carried his burden for permissive intervention.

## III. Setting aside the 1995 Consent Decree

Mr. Belchak argues that the 1995 Consent Decree is void and should be set aside because it did not meet the statutorily-mandated 30-day public comment period.  CERCLA does not require a public comment period for any settlement agreements or consent decrees brought by

13

State Trustees.  *See State of Arizona v. Components Inc.*, 66 F.3d 213, 216 (9th Cir. 1995).  Also, contrary to Mr. Belchak's claims, there was a 30 day comment period provided prior to the entering of the 1995 Consent Decree.

Mr. Belchak's memorandum does not cite any specific statute, but it is assumed that he refers to CERCLA § 122, 42 U.S.C. § 9622, which provides for a 30-day public comment period as to certain agreements entered into by the United States government.  However, this section only applies to the United States and not to settlements by State Trustees.  The plain language of the statute clearly shows "that section 9622 applies only to settlements entered into between the United States and potentially responsible parties.  It has no bearing on the settlements between states and potentially responsible parties."  *State of Arizona*, 66 F.3d at 216.

Although the parties involved in the 1995 Consent Decree were not under statutory obligation to provide a 30-day public comment period, one was provided.  A public comment period was performed from June 1-30, 1995.  (Nielson Aff. ¶ 4.)  Notice was published in both the Salt Lake Tribune and the Deseret News.  (*Id.*)  Comment documents, responses, and modifications were submitted to the court when the Consent Decree was filed August 1, 1995.  (*Id.* at ¶ 7.)  These facts directly contradict Mr. Belchak's unsupported claim that required public comment was not provided.

As a side note, Mr. Belchak also stated in his memorandum that the 1992 Consent Decree was set aside "on the basis that the requisite 30-day 'public comment' period had not been observed."  (Pet'r Br. 4.)  This claim is false.  The proposed 1992 Consent Decree was denied because this Court found that the settlement was "not just and fair or consistent with the

purposes of CERCLA." *State of Utah*, 801 F.Supp. at 572.  There is no mention in this Court's prior opinion of a 30-day public comment period as a reason for the rejection of the proposed 1992 consent decree.

Based upon the foregoing, this Court denies the petitioner's motion for intervention to set aside the 1995 Consent Decree.  Manifestly, Mr. Belchak's motion is untimely, it will prejudice the existing parties, and his interest was adequately represented by the State of Utah.

It has been ten years since this Court entered the 1995 Consent Decree.  Mr. Belchak has had at least 10 years of constructive notice, and 18 months of verifiable actual knowledge to file any motion in the case.  Years of research, negotiations, and millions of dollars have been spent by the existing parties in reliance on the 1995 Consent Decree.  Mr. Belchak fails to cite a statute, case, or verifiable fact to support any of the claims in his motion.  Any intervention at this point would only delay cleanup and waste public and private resources.

Accordingly, this Court DENIES the petitioner's motion for intervention.

IT IS SO ORDERED.

DATED this  29th  day of September, 2005.

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE